**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 36245**

| | | |
|---|---|---|
| TIFANI WATTENBARGER AND JARED WATTENBARGER, a married couple, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Boise, May 2010 Term |
| v. | ) ) | 2010 Opinion No. 69 |
| A.G. EDWARDS & SONS, INC., a Missouri corporation; and GENE GILLETTE, an individual, | ) ) ) ) | Filed: June 28, 2010<br><br>Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Honorable Gregory S. Anderson, District Judge.

The order of the district court is affirmed.

Beard St. Clair Gaffney McNamara Calder, P.A., Idaho Falls, for appellants. Michael D. Gaffney argued.

Hawley Troxell Ennis & Hawley, LLP, Pocatello, for respondents. Howard D. Burnett argued.

_____

J. JONES, Justice.

Jared and Tifani Wattenbarger appeal the district court's order dismissing their case, compelling arbitration, and awarding attorney fees and costs to A.G. Edwards & Sons, Inc. and Gene Gillette (the respondents). We affirm.

**I.**
**Facts and Procedural History**

Tifani first sought financial planning services from A.G. Edwards in March of 1993 when she and her then husband, Shan Clement, met with Gillette to open individual retirement accounts (IRAs). On March 31, 1993, Tifani signed a new account card that contained the following provision above the signature line:

I hereby adopt the A.G. Edwards and Sons, Inc. Custodian Account Agreement; provided, that the Custodial Account Agreement shall be in force if and only if this Adoption Agreement is accepted below.

. . . .

By signing this agreement, I acknowledge that this agreement contains a binding and enforceable arbitration provision on page 21 in paragraph 13 of Article XII of the Custodial Account Agreement.

Article XII of the custodial account agreement provides, in part:

(12) The following disclosure is required by various regulatory bodies but shall not limit the applicability of the following arbitration provision to any controversy claim or issue in any controversy or claim which may arise between the Depositor and the Custodian:

*(a) ARBITRATION IS FINAL AND BINDING ON THE PARTIES.*

*(b) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.*

*(c) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.*

*(d) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.*

*(e) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.*

**(13) The Depositor agrees and, by carrying any account for the Depositor, the Custodian agrees that all controversies between the Depositor and the Custodian or any of the Custodian's present or former officers, directors, agents or employees which may arise for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Incorporated, or an arbitration facility provided by any other securities exchange of which the Custodian is a member, or the American Arbitration Association, or the Municipal Securities Rulemaking Board, and in accordance with the rules obtaining of such organization. The Depositor may elect in the first instance whether arbitration shall be before and in accordance with the rules of one of the aforementioned arbitration forums by registered letter or telegram addressed to the Custodian at the Custodian's office in St. Louis, Missouri. If the Depositor fails to notify the**

2

**Custodian of such election as specified within five (5) days after receipt from the Custodian of a request to make such election, then the Custodian may make such election.**

At least one of the arbitrators appointed to hear any controversy to be settled by arbitration shall be currently employed full time by a member organization of the New York Stock Exchange, Inc., unless otherwise agreed in writing prior to the time of the arbitration.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior, on or subsequent to the execution of this arbitration agreement. This arbitration provision shall be interpreted according to federal law and the Federal Arbitration Act. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered into any court, state or federal, having jurisdiction.

In September of 1994, Shan Clement was killed in an accident and Tifani collected a $200,000 life insurance policy. Tifani met with Gillette in March of 1995 for advice on investing the life insurance proceeds. Specifically, Tifani alleged that she sought advice on investment growth accounts to provide for the future college and mission expenses for her two children, Mitchell and Kylie. Gillette invested $15,000 for each child in annuity accounts that cannot be withdrawn, without severe penalties, until the children reach 59½ years of age. Gillette opened another, similar annuity account for each child in the amount of $4,000 in September of 1995.

Tifani married Jared Wattenbarger in December of 1999. Gillette's alleged error was discovered by the Wattenbargers in January of 2007 when they met with Jared's investment advisor to discuss the children's impending educational expenses. The Wattenbargers filed suit against the respondents on December 20, 2007, alleging professional negligence/malpractice and fraud. The respondents appeared and moved to stay the matter and compel arbitration on the basis of the custodial account agreement or, in the alternative, to dismiss the claim. The Wattenbargers argued that the matter should proceed in district court because the annuities were outside the scope of the arbitration clause and, even if they were not, the arbitration clause was unconscionable.

The district court found that the arbitration clause was not unconscionable and that the dispute between the parties fell within the scope of the arbitration provision. Consequently, the district court granted the motion to dismiss and awarded attorney fees and costs to the respondents. The Wattenbargers appealed to this Court, arguing that the district court erred in:

(1) applying the wrong standard of review to the motion to dismiss; (2) finding that the Wattenbargers agreed to arbitrate their claims against the respondents as a matter of law; (3) finding that the Wattenbargers' claims were within the scope of the arbitration agreement; (4) finding that the arbitration clause was not unconscionable; and (5) awarding costs and attorney fees to the respondents.

## II.
## Issues on Appeal

The following issues are presented on appeal: (1) whether this matter is governed by federal arbitration law; (2) whether arbitrability can be determined as a matter of law; (3) whether the tort claims fall within the scope of the arbitration agreement; (4) whether the Wattenbargers are bound by the arbitration agreement; (5) whether the arbitration clause is unconscionable; (6) whether the district court should have awarded attorney fees to the respondents; and (7) whether the respondents are entitled to an award of attorney fees on appeal.

## III.
### A.
## Standard of Review

The district court dismissed the claims presented in this case on the respondents' Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration. "Arbitrability is a question of law to be decided by the court." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007). Accordingly, we exercise free review over questions of arbitrability and may draw our own conclusions from the evidence presented. *Id.* "A court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are to be 'resolved in favor of coverage.'" *Storey Constr., Inc. v. Hanks*, 148 Idaho 401, 412, 224 P.3d 468, 479 (2009) (quoting *Int'l Assoc. of Firemen, Local No. 672 v. City of Boise*, 136 Idaho 162, 168, 30 P.3d 940, 946 (2001)).

Determining the scope of an arbitration clause is a question of contractual interpretation. In determining the meaning of a contract, "[w]hen the language of a contract is clear and unambiguous," its meaning and legal effect are questions of law over which we exercise free review. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). "A contract is ambiguous if it is reasonably subject to conflicting interpretations," which will render interpretation of the contract a question of fact. *Id.* at 185–86, 75 P.3d at 746–47. The relevant

4

inquiry in determining whether a contract is ambiguous is the meaning intended by the parties at the time of contracting, not at some future time. *Id.* at 185, 75 P.3d at 746.

When reviewing the district court's findings on unconscionability, we must accept the factual findings as true if supported by substantial and competent evidence. *Lovey v. Regence Blueshield of Idaho*, 139 Idaho 37, 41, 72 P.3d 877, 881 (2003). The determination of whether a contractual provision is unconscionable under the facts as found is a question of law over which this Court exercises free review. *Id.*

**B.**
**Governing Law**

There is a dispute between the parties about which law governs the interpretation of the arbitration agreement and which law governs the contract as a whole. The Wattenbargers argue that the Federal Arbitration Act (FAA) applies and, under the act, an arbitration clause is only applicable to claims arising from the contract in which it is contained. Traditionally, the FAA applies in all cases in which the underlying transaction affects interstate commerce. *Moore v. Omnicare, Inc.*, 141 Idaho 809, 815, 118 P.3d 141, 147 (2005) (citing 9 U.S.C. § 2 (2003)). However, where the parties have explicitly agreed to the application of Idaho's Uniform Arbitration Act (UAA), it will govern "as the substantive law in arbitration." *Id.* In this case, there is no agreement between the parties that the UAA should apply and, in fact, they explicitly agreed that the FAA should apply to the agreement. Accordingly, the FAA applies to all substantive issues concerning arbitration because of the parties' agreement and because the sale of securities, such as IRAs and annuities, is a transaction in interstate commerce. *See Reece v. U.S. Bancorp Piper Jaffray, Inc.*, 139 Idaho 487, 490, 80 P.3d 1088, 1091 (2003) ("Despite the parties and activities residing primarily within the same state, securities transactions still involve interstate commerce.").[1]

The Wattenbargers contend that because the FAA applies, the district court erred in granting the respondents' motion to dismiss based on section 2 of the FAA and the Sixth Circuit Court of Appeals' decision in *Glazer v. Lehman Bros.*, 394 F.3d 444 (6th Cir. 2005). Section 2 of the FAA provides:

---

[1] This Court has also noted that the distinction between state and federal substantive arbitration law is largely a distinction without a difference, and has often applied the UAA even in the face of an agreement to apply the FAA because the applicable legal principles are one and the same. *Mason*, 145 Idaho at 200 n.1, 177 P.3d at 947 n.1.

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The court in *Glazer*, in turn, held that an arbitration provision is not a separate contract from the contract in which it is contained and an arbitration provision is only separable in the sense that its validity may be considered separately from the validity of the contract as a whole. 394 F.3d at 453–54.

The Wattenbargers somehow contend that *Glazer* and section 2 of the FAA, taken together, require an arbitration clause to be contained in the agreement out of which the dispute arises. We are unable to reach this conclusion based on the authority presented. The *Glazer* court, while holding that an arbitration provision contained in a contract is not a separate and distinct contract, in no way indicated that an arbitration provision contained in one agreement cannot apply to a dispute arising from another.[2] Furthermore, while the language of section 2 provides that an agreement to arbitrate claims arising out of a contract involving commerce is valid and enforceable, section 2 does not provide that the parties cannot enter into an agreement to arbitrate all future claims between them, including those arising from subsequent transactions or contracts. Accordingly, the Wattenbargers' arguments based on the application of the FAA are without merit.

All other issues raised by the Wattenbargers deal with the validity and scope of the contract itself and require the interpretation of contractual terms. Issues of substantive law concerning the interpretation of a contract and defenses to enforcement of a contract are matters of state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should

---

[2] The Wattenbargers also cite *Battaglia v. McKendry*, 233 F.2d 720 (3d Cir. 2000), and *Alticor, Inc. v. National Union Fire Insurance Co.*, 411 F.3d 669 (6th Cir. 2005), in support of their argument that federal law requires a claim that is subject to arbitration to arise out of the agreement in which the arbitration clause is contained. However, the arbitration provision at issue in both of those cases contained language limiting arbitration to claims arising out of those agreements, and the courts in no way indicated that their limited reading of the arbitration clause was based on section 2 of the FAA or the *Glazer* rationale. *Alticor, Inc.*, 411 F.3d at 670; *Battaglia*, 233 F.3d at 723. As discussed below, the language of the arbitration provision at issue in this case is much broader. Accordingly, we do not find *Battaglia* and *Alticor, Inc.* persuasive.

apply ordinary state-law principles that govern the formation of contracts."). Thus, state law will apply to all other issues presented in this matter.

**C.**
**Determination of Arbitrability as a Matter of Law**

The Wattenbargers argue that the district court failed to properly apply the summary judgment standard to the respondents' motion to dismiss and, as a result, improperly dismissed the matter because the case could not be dismissed as a matter of law. The Wattenbargers contend that they raised several factual questions that must be resolved in their favor and against arbitrability of their claims. The respondents argue that even if the district court was required to convert the motion to dismiss into a motion for summary judgment and failed to do so, that failure did not constitute reversible error because the standard of review is the same.

The respondents' motion should have been treated as one for summary judgment. Despite the fact that the respondents captioned their motion as one to dismiss or compel arbitration, the dismissal motion, in essence, is also a motion to compel arbitration. This Court treats mislabeled claims according to their substance in civil cases. *Carroll v. MBNA America Bank, N.A.*, 148 Idaho 261, 268, 220 P.3d 1080, 1087 (2009). Accordingly, any relief resulting from the respondents' motion should have been treated as a decision on a motion to compel arbitration. When ruling on a motion to compel arbitration, the district court applies the same standard as if ruling on a motion for summary judgment. *See, e.g.*, *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) ("A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. . . . On appeal, a 'question concerning the applicability and scope of an arbitration agreement' is subject to de novo review." (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999))); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Tenn. Health Mgm't, Inc. v. Johnson*, No. 1080762, 2010 WL 1424018, at *4 (Ala. April 9, 2010) ("A motion to compel arbitration is analogous to a motion for summary judgment."). This is because issues of arbitrability are questions of law. *Mason*, 145 Idaho at 200, 177 P.3d at 947. As a result, this Court is free to draw its own conclusions from the evidence presented concerning arbitrability. *Id.* Accordingly, when determining arbitrability, the court may consider all evidence before it and determine whether the controversy is arbitrable as a matter of law.

When reviewing the grant of a motion for summary judgment, we apply the same standard used by the district court in ruling on the motion. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). "Summary judgment is properly granted when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Idaho R. Civ. P. 56(c)). We must construe the record in favor of the nonmoving party, drawing all reasonable inferences in that party's favor. *Id.* If we find that reasonable minds could differ on conclusions drawn from the evidence presented, the motion must be denied. *Id.* The burden of demonstrating the absence of a genuine issue of material fact is on the moving party. *Id.*

If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment. Idaho R. Civ. P. 56(e); *Kiebert v. Goss*, 144 Idaho 225, 228, 159 P.3d 862, 865 (2007). The nonmoving party must come forward with evidence, by affidavit or otherwise, that contradicts the evidence submitted by the moving party in order to survive summary judgment. *Kiebert*, 144 Idaho at 228, 159 P.3d at 865. The district court is not required to search the record for evidence of an issue of material fact; it is the nonmoving party's burden to bring that evidence to the court's attention. *Vreeken v. Lockwood, Eng'g, B.V.*, 148 Idaho 89, 103–04, 218 P.3d 1150, 1164–65 (2009). A mere scintilla of evidence is not enough to create a question of fact that will preclude summary judgment. *Callies v. O'Neal*, 147 Idaho 841, 846, 216 P.3d 130, 135 (2009).

Thus, if the district court found that the respondents met their burden, the Wattenbargers were required to present more than a scintilla of evidence demonstrating the existence of a question of fact that must be resolved in their favor. This standard allows the district court and this Court to determine arbitrability as a matter of law under the summary judgment standard. Consequently, the district court's finding of arbitrability as a matter of law does not constitute reversible error unless the record contains evidence that indicates the agreement to arbitrate is invalid or the claims presented are not within the scope of the arbitration clause. The Wattenbargers have identified two issues that they contend preclude a finding of arbitrability: (1) whether the custodial account agreement produced by the respondents is actually the one

8

referenced in the new account card; and (2) whether the terms of the custodial account agreement are ambiguous, making its interpretation a question of fact.

## 1.
## Authenticity of the Agreement

Questions concerning the authenticity of the custodial account agreement do not require the district court to infer that the arbitration agreement is invalid. The respondents produced three key pieces of evidence that remove the authenticity of the agreement from the realm of factual dispute: (1) the affidavit of Gene Gillette; (2) the new account card; and (3) the custodial account agreement. Gillette's affidavit notes that Tifani signed a new account card when she decided to open an IRA with A.G. Edwards and that signing such a card was A.G. Edwards' standard procedure. The new account card signed by Tifani was attached to the affidavit as Exhibit A. The new account card provides that, by signing the card, the signatory is bound by an arbitration clause contained in the custodial account agreement. Tifani's signature appears below this statement in the copy of the agreement provided by Gillette. While Tifani alleges that she does not remember signing this document, she does not argue that she did not sign it, nor has she produced any evidence indicating that she did not sign it. Tifani also alleges that she does not remember being provided with or reviewing the custodial account agreement. The custodial account agreement was provided as Exhibit B to Gillette's affidavit. Page 21, article XII, paragraph 13 of that agreement provides that any and all claims arising out of the relationship between the respondents and Tifani shall be arbitrated. The agreement indicates the form was adopted by A.G. Edwards in 1988, meaning that, unless superseded by a subsequent agreement, it was in effect in 1993 when Tifani signed the new account card.

The Wattenbargers argue that there is a question of fact that must be resolved in their favor because of the print quality of the new account card that was produced. They argue that the number 12 appears after the word "paragraph" in the account card, which, if true, would mean that the account card refers to a provision of the custodial account agreement containing general disclosures about arbitration without any agreement to arbitrate. The Wattenbargers contend that, based on this reading, it is possible that the custodial account agreement provided is the incorrect version. They provide no other evidence that the document provided by the respondents is not the document referenced in the new account card.

Given the evidence surrounding the agreement produced and the new account card, the Wattenbargers have failed to raise any questions concerning the validity of the agreement that must be resolved in their favor. The quality of the new account card produced is sufficient to show that it refers to a provision of article XII of the custodial account agreement that appears on page 21. There are three paragraphs of article XII on page 21—paragraphs 11, 12, and 13. The paragraph number on the new account card could be either a 12 or a 13, although it does appear to be a 13. Given the disclosures made in the new account card and the context in which they are made, it was not unreasonable for the district court to conclude that new account card referred to paragraph 13 because that paragraph contained the arbitration clause. Further, because the new account card adopts the entire custodial account agreement, all provisions of the arbitration clause are part of the new account card. In addition, the custodial account agreement produced was in effect at the time the new account card was signed. Accordingly, merely raising a general question about the print quality of a copy is the type of mere scintilla of evidence insufficient to meet the summary judgment burden. Because the whole agreement was adopted, it is irrelevant whether the number in the card is a 12 or a 13 because Tifani is bound by both provisions. As a result, the Wattenbargers have failed to show that the district court erred in determining the copy of the custodial account agreement was authentic.

## 2.
### Ambiguity of the Contract

The language of the agreement entered into between Tifani and A.G. Edwards does not create an ambiguity that must be resolved in the Wattenbargers' favor. In order for the interpretation of a contract to become a question of fact, its language must be ambiguous. *Lamprecht*, 139 Idaho at 185, 75 P.3d at 746. A contract is ambiguous if it is reasonably subject to conflicting interpretations. *Id.* The Wattenbargers argue that the custodial account agreement is ambiguous because of the use of quotation marks around the term "account" in the contract. They argue that the use of quotations marks, along with references to Internal Revenue Code section 408(a), indicates the intention that the agreement only apply to IRAs. They attempt to bolster this argument by pointing out that there is no other definition of "account" in the agreement.

Any potential ambiguity in the use of the term "account" will not render the arbitration clause ambiguous. Even if the term "account" was meant only to refer to IRAs, the use of that

10

term is irrelevant in deciding whether the Wattenbargers' claims are arbitrable. The relevant portion of the custodial account agreement, paragraph 13 of article XII, provides that "*all controversies* between the Depositor [Tifani] and the Custodian [A.G. Edwards] or any of the Custodian's present or former . . . agents or employees which may arise for *any cause whatsoever*, shall be determined by arbitration." The only use of the term "account" within that paragraph is in the phrase "by carrying an account for the Depositor [Tifani]" in describing when A.G. Edwards will become bound by the agreement. Otherwise, the plain language of the agreement states that all claims between Tifani and the respondents will be subject to arbitration regardless of whether they arise from Tifani's accountholder status. As a result, the claim presented in this matter is subject to arbitration regardless of the meaning of the term "account" because Tifani has fulfilled the conditions of the arbitration clause by opening an A.G. Edwards IRA. By fulfilling that condition, all claims between Tifani and the respondents are subject to arbitration under the plain language of the clause. Accordingly, any confusion over the context of the term "account" does not create an inference that the claim presented is not within the scope of the arbitration agreement.

**3.**

The respondents were successful in producing sufficient evidence of the existence of an agreement to arbitrate disputes arising between themselves and the Wattenbargers. The Wattenbargers have failed to produce any evidence of a question of fact that must be resolved in their favor. Accordingly, it was not reversible error for the district court to rule in the respondents' favor and we may freely review the issue of arbitrability.

**D.**
**Arbitrability**

The Wattenbargers' claims are subject to arbitration under the plain language of the arbitration clause. "A court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are to be 'resolved in favor of coverage.'" *Hanks*, 148 Idaho at 412, 224 P.3d at 479 (quoting *Int'l Assoc. of Firemen*, 136 Idaho at 168, 30 P.3d at 946). The Wattenbargers argue that regardless of the language used in the arbitration clause, their tort claims are not subject to arbitration under our holding in *Lovey v. Regence Blueshield of Idaho*, 139 Idaho 37, 72 P.3d 877 (2003), which they contend requires the claims to be "arising out of or

relating to the contract" that contains the arbitration clause. Because the contract that contained the clause in this case concerned IRAs and the tort claims presented are based on a separate contract for the provision of annuities, the Wattenbargers contend that their claims do not fall within the scope of the clause.

The Wattenbargers' reliance on *Lovey* is misplaced because of the language of the arbitration clause at issue in that case. In *Lovey*, the arbitration clause read: "Any controversy or claim *arising out of or relating to this Policy*, or the breach thereof, shall be settled by arbitration in accordance with the applicable rules of the American Arbitration Association . . . ." *Id.* at 44, 72 P.3d at 884 (emphasis added). Our holding in *Lovey* was based on this language, and the holdings of other courts that we reviewed in reaching our decision were based on the same or similar language. *Id.* at 46–48, 72 P.3d at 886–88. In contrast, the arbitration clause at issue in this matter provides: "*all controversies* between the Depositor [Tifani] and the Custodian [A.G. Edwards] or any of the Custodian's present or former . . . agents or employees which may arise for *any cause whatsoever*, shall be determined by arbitration."

The *Lovey* holding does not affect our interpretation of this clause because the language used is much broader than that in *Lovey*. The clause at issue here, unlike the one in *Lovey*, does not contain the "arising out of or related to" language; instead, it makes clear that all claims, whether or not related to the contract, are subject to arbitration. The key provision of the clause at issue here is "all controversies between the Depositor and the Custodian," meaning that the key relationship for determining the scope of the contract is not of the claim to the contract, but of the parties to each other. As a consequence, because Tifani and the respondents are both parties to the claim, it is a controversy between the depositor and the custodian that falls within the scope of the clause. Thus, unless the arbitration clause is invalid for some reason, the claims presented in this case fall within the scope of the clause and are subject to arbitration.

## E.
### Binding Effect of the Agreement

The Wattenbargers argue that Tifani's claims are not subject to arbitration because she did not sign the custodial account agreement that contains the clause. This argument ignores well-established Idaho law. In *Loomis v. Cudahy*, this Court held that the terms of another agreement not signed by the parties can be incorporated into the signed agreement by reference when the unsigned terms are readily available for inspection by the parties. 104 Idaho 106, 118–

19, 656 P.2d 1359, 1371–72 (1982). The new account card signed by Tifani makes clear reference to the portion of the custodial account agreement that contains the arbitration clause. Furthermore, as noted above, there is no evidence that Tifani was not provided with the custodial account agreement or that it was not available to her. Thus, Tifani is bound by the arbitration clause even though it is not contained in the signed agreement.

The Wattenbargers also argue that Jared Wattenbarger has a claim against the respondents because Tifani and Jared merged their investments, rendering them community property. As a result, the Wattenbargers contend that Jared's claims are not subject to arbitration because he was not a signatory of the agreement between Tifani and the respondents. The district court rejected this argument based on our holding in *Dan Wiebold Ford, Inc. v. Universal Computer Consulting Holding, Inc.*, 142 Idaho 235, 127 P.3d 138 (2005). In that case, we cited a Michigan case as authority for the proposition that where one spouse bases his or her legal rights on a contract entered into by another spouse, the nonsignatory spouse is bound by the terms of the contract, including an arbitration clause. *Id.* at 242–43, 127 P.3d at 145–46.

The Wattenbargers do not dispute this holding, but instead argue that it is inapplicable in this case because Jared and Tifani were not married at the time the agreement with the respondents was executed. They provide no authority in support of this argument, only noting that it stands to reason that spousal agency cannot reach so far into the past. As adequately pointed out by the respondents and the district court, the Wattenbargers' argument would produce an absurd result. The essence of the Wattenbargers' argument is that a party whose legal rights are solely based on an agreement signed by another is not subject to the terms of that agreement if he had no relationship with the signatory party at the time the agreement was executed. As the district court noted "[t]he same rationale would apply in a situation where a plaintiff attempts to avoid arbitration by naming a co-plaintiff who did not sign the arbitration agreement." Accordingly, in the absence of any authority supporting their argument, and because of the absurd result it would produce, we affirm the district court's finding that both parties are bound by the arbitration agreement.

## F.
## Unconscionability

The Wattenbargers argue that even if their claims fall within the scope of the arbitration clause, their claims are not subject to arbitration because the arbitration clause is unconscionable.

Equitable principles allow a court to intervene to change the terms of a contract in the face of evidence of unconscionable conduct serious enough to justify court interference. *Lovey*, 139 Idaho at 41–42, 72 P.3d at 881–82. In order for a contractual provision to be voided for unconscionability, it must be both procedurally and substantively unconscionable. *Id.* at 42, 72 P.3d at 882. Procedural unconscionability concerns the bargaining process leading to the formation of a contract while substantive unconscionability focuses on the contract's terms. *Id.*

Procedural unconscionability exists "when the contract 'was not the result of free bargaining between the parties.'" *Id.* (quoting *N.W. Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 183, 646 P.2d 422, 425 (1982)). Indicators of procedural unconscionability generally include a lack of voluntariness and a lack of knowledge. *Id.* Indicators of lack of voluntariness include "the use of high-pressure tactics, coercion, oppression or threats short of duress." *Id.* A lack of voluntariness can be shown by an imbalance in bargaining power resulting from the non-negotiability of the stronger party's terms and the inability to contract with another party due to time, market pressures, or other factors. *Id.* Indicators of a lack of knowledge include a "lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language; the lack of opportunity to study the contract and inquire about its terms; or disparity in sophistication, knowledge, or experience of the parties." *Id.*

The focus of substantive unconscionability is solely on the terms of the contractual provision at issue. *Id.* A provision is substantively unconscionable if it is a bargain no reasonable person would make or that no fair and honest person would accept. *Id.* If a contract term is one-sided or oppressive, it may be substantively unconscionable. *Id.* In determining whether a term is unconscionable, a court must consider "the purpose and effect of the terms at issue, the needs of both parties and the commercial setting in which the agreement was executed, and the reasonableness of the terms at the time of contracting." *Id.* at 42–43, 72 P.3d at 882–83.

We found unconscionability sufficient to invalidate a contractual limitation of liability in *Walker v. American Cynamid Co.*, 130 Idaho 824, 948 P.2d 1123 (1997). In that case, we found procedural unconscionability because Walker had no opportunity to bargain with American Cynamid concerning the terms contained on a product label, he lacked knowledge of the terms because they were ambiguous, and American Cynamid had superior knowledge of the contract terms. *Id.* at 830–31, 948 P.2d at 1129–30. We also found substantive unconscionability because

the ambiguity in the terms of the label resulted in an unfair surprise to Walker because a reasonable purchaser would have expected the type of damages he suffered to be recoverable. *Id.* at 831, 948 P.2d at 1130.

We refused to invalidate an arbitration clause in an insurance contract on the basis of unconscionability in *Lovey*. In that case, the district court found procedural unconscionability based on the fact that the clause was in an adhesion contract[3] and, due to market forces in the insurance industry, Lovey lacked the ability to shop around for an insurance policy with more favorable terms. *Lovey*, 139 Idaho at 43, 72 P.3d at 883. The district court also based its finding of procedural unconscionability on the fact that Lovey was not given the opportunity to read the contract before signing it. *Id.* at 44, 72 P.3d at 884. Finally, the district court's finding of procedural unconscionability was based on the fact that the arbitration clause was on the twenty-first page of a twenty-five-page contract. *Id.* We rejected those findings because they lacked support in the record. *Id.* We found that the record contained no evidence that other insurers used similar clauses, that Lovey had asked for a copy of the arbitration agreement or asked any questions concerning its terms, that the arbitration clause was written in confusing or unclear language, or that an arbitration clause is required to be found at any specific location in a contract in order to be valid. *Id.* at 43–45, 72 P.3d at 883–85. As a result, this Court held that the arbitration clause was valid and remanded the case for arbitration. *Id.* at 49, 72 P.3d at 889.

The district court in this case found that the arbitration clause was neither procedurally nor substantively unconscionable. The district court rejected an argument for procedural unconscionability because it found the issue was controlled by *Lovey*. The Wattenbargers argued that the clause was procedurally unconscionable because it was contained in an adhesion contract, Tifani did not understand the clause, and Tifani did not have an opportunity to read and study the contract. The district court rejected these arguments based on *Lovey* because the record did not reflect that Tifani was unable to open an IRA elsewhere or that she had ever asked for a copy of the arbitration clause or asked questions about it. The court also rejected an argument for procedural unconscionability based on the fact that the clause would prevent Tifani's children from pursuing their claims, despite their infancy at the time the agreement was signed. The

---

[3] An adhesion contract is a standardized contract drafted by the more powerful party when the parties are of unequal bargaining strength and presented to the weaker party on a take-it-or-leave-it basis. *Lovey*, 139 Idaho at 43, 72 P.3d at 883.

15

district court refused to consider this argument because the children were not parties to the litigation. The Wattenbargers also argued that the clause was substantively unconscionable because it required a member of the New York Stock Exchange to be involved in the arbitration, resulting in bias in favor of the respondents. The district court rejected this argument because the Wattenbargers failed to present any evidence of potential bias. The Wattenbargers also based their substantive unconscionability argument on the clauses' effects on Tifani's children. The district court again rejected this argument because the children were not parties to the action.

The Wattenbargers reassert their district court arguments on appeal, along with additional arguments focused on the manner in which the agreement was entered and the public policy implications of upholding the agreement. First, the Wattenbargers reassert their argument that it is inappropriate to give effect to an arbitration clause that is incorporated by reference into another agreement signed by the parties. The Wattenbargers cite no authority for this proposition, and it is against the great weight of authority from other jurisdictions.[4] As for the procedural unconscionability arguments asserted by the Wattenbargers, we reject those arguments for the same reason they were rejected in *Lovey*. First, the Wattenbargers point to no evidence in the record that Tifani was precluded by market pressures from seeking an IRA or other financial planning services from another firm. Second, there is no indication in the record that Tifani ever asked to see the custodial agreement or that she asked any questions about its terms. Third, the plain language of the arbitration clause demonstrates that it does not use overly complex or legalistic language. The clause provides: "*all controversies* between the Depositor [Tifani] and the Custodian [A.G. Edwards] or any of the Custodian's present or former . . .

---

[4] *See, e.g.*, *World Rental & Sales, LLC v. Volvo Const. Equip. Rents, Inc.*, 517 F.3d 1240, 1245 (11th Cir. 2008) ("It is clear, however, that an arbitration clause can be incorporated even if the relevant incorporation language does not specifically refer to it."); *Ibeto Petrochemical Indus., Ltd. v. M/T Beffen*, 475 F.3d 56, 63 (2d Cir. 2007) ("We long have held that 'a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement.'" (quoting *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993))); *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169–70 (3d Cir. 1999) (holding that arbitration was appropriate where the ERISA plan incorporated by reference terms of a supplemental agreement, which included an arbitration clause); *R.J. O'Brien & Assocs. v. Pipkin,* 64 F.3d 257, 261 (7th Cir. 1995) (contract did not need to contain an explicit arbitration clause if it validly incorporated by reference an arbitration clause in another document); *ISP.com, LLC v. Theising*, 805 N.E.2d 767, 776 (Ind. 2004) ("There is no requirement that an arbitration clause be included in all potentially relevant documents to be binding if it covers the dispute at hand."); *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006) (finding that Borrower's allegations that she did not read the arbitration agreement, which was executed as separate document in connection with loan transaction, and that the arbitration agreement was not brought to her attention or explained to her, did not establish the arbitration agreement was procedurally unconscionable); *Helen Whiting, Inc. v. Trojan Textile Corp.*, 121 N.E.2d 367, 371 (N.Y. 1954); 4 AM. JUR. 2D *Alternative Dispute Resolution* § 52 (2009).

agents or employees which may arise for *any cause whatsoever*, shall be determined by arbitration." This provision states in plain language that all claims Tifani might have against the respondents are subject to arbitration. Fourth, had Tifani read the custodial agreement, the arbitration provisions are clearly set off from the rest of the provisions of the agreement in a different type and font. As we noted in *Lovey*, an arbitration clause does not have to appear in any particular place in the agreement. Accordingly, under *Lovey*, the district court's finding that the agreement to arbitrate is not procedurally unconscionable is affirmed. As a result, the clause cannot be voided on the basis of unconscionability because it is not both procedurally and substantively unconscionable. Consequently, we find that the agreement to arbitrate is not unconscionable without reaching the issue of substantive unconscionably.

### G.
### Statutory Unconscionability/Idaho Consumer Protection Act

The Wattenbargers also argue that the arbitration clause should not be enforced because it is unconscionable as a matter of statutory law. The Wattenbargers argue that the arbitration clause is unconscionable because it constitutes an "[u]nconscionable method[], act[] or practice[]" as defined in Idaho Code section 48-603C. Section 48-603C provides that an "unconscionable method, act or practice violates the" Consumer Protection Act if it occurs "before, during, or after the conduct of trade or commerce." I.C. § 48-603C(1). Factors in determining unconscionability under the act include: (1) knowing exploitation of some mental or physical weakness of the consumer; (2) charging a grossly excessive price for goods or services; (3) knowing inducement of the consumer to enter into a one-sided transaction favoring the seller; and (4) conduct or a pattern of conduct that would offend the public conscience. I.C. § 48-603C(2). The Wattenbargers argue that A.G. Edwards, in entering into the arbitration agreement with Tifani, engaged in conduct that is prohibited by section 48-603C. Specifically, the Wattenbargers argue that the breadth of the agreement and potential arbitrator bias render the act of offering the agreement an unconscionable behavior under the statute. Although it is unclear exactly what relief the Wattenbargers are seeking on the basis of this statutory argument, it appears that they are asking this Court to invalidate the clause on the basis of their potential statutory cause of action.

Regardless of the relief the Wattenbargers are seeking, the statutory argument will not be addressed because it was raised for the first time before this Court. "Appellate court review is

17

limited to the evidence, theories and arguments that were presented . . . [in the district court]." *Meyers v. Hansen*, 148 Idaho 283, 292, 221 P.3d 81, 90 (2009) (quoting *Obenchain v. McAlvain Constr., Inc.,* 143 Idaho 56, 57, 137 P.3d 443, 444 (2006)). In order to preserve an issue for appeal, the issue must be raised in the district court. *St. Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009). This is because the district court must rule on an issue before it can be presented for appeal. *Id.* We do not review an issue unless the parties can point to an adverse ruling on that issue in the record. *Id.* Appellate courts follow this rule because it would be unfair to overrule the district court on issues not presented to it on which it did not have an opportunity to rule. *See Gasstop Two, LLC v. Seatwo, LLC*, 225 P.3d 1072, 1076 (Wyo. 2010). Accordingly, we will not address the statutory issue raised by the Wattenbargers.

Even though we freely review the issue of unconscionability, *Lovey*, 139 Idaho at 41, 72 P.3d at 881, and freely review issues of statutory construction, *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000), it is inappropriate for the Wattenbargers to raise new theories on appeal that were not pursued below. The Wattenbargers freely admit that they did not raise this issue in the district court, but argue that it is appropriate for us to review the issue because of our power to freely review statutes. This argument is unavailing because the statutory issue must be raised in district court before we may review it. As a result, because the district court did not rule on the issue presented, we will not address it.

## H.
## Attorney Fees in District Court

Finally, the Wattenbargers argue that the district court erred in awarding the respondents attorney fees. The Wattenbargers argue that the district court: (1) failed to adequately perceive the award of attorney fees as a matter of discretion; (2) erred in determining the respondents were prevailing parties; (3) incorrectly determined that there was a basis to award fees; and (4) awarded excessive fees. Determination of prevailing party status and the amount of a fee award are matters within the discretion of the district court. *Jorgensen v. Coppedge*, 148 Idaho 536, 538, 224 P.3d 1125, 1127 (2010). In determining whether the district court abused its discretion, we consider whether the district court: (1) perceived the issue as one of discretion; (2) acted within the bounds of its discretion and consistent with applicable legal standards and (3) reached

18

its decision through the exercise of reason. *Id.* We will only reverse the district court's decision on prevailing party status in the rarest of circumstances. *Id.*

The prevailing party in an action, in some situations, is entitled to an award of discretionary costs and attorney fees. Idaho R. Civ. P. 54(d)(1); *Jorgensen*, 148 Idaho at 538, 224 P.3d at 1127. Idaho Rule of Civil Procedure 54(d)(1) guides the district court's determination of prevailing party status. *Jorgensen*, 148 Idaho at 538, 224 P.3d at 1127. It provides that "[i]n determining which party to an action is the prevailing party and entitled to [attorney fees], the [district] court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." Idaho R. Civ. P. 54(d)(1)(B). In order for the prevailing parties to be entitled to attorney fees, they must demonstrate that entitlement under the provisions of a governing statute or contract. Idaho R. Civ. P. 54(e)(1).

The district court found that the respondents were entitled to fees under article XII, paragraph 10 of the Custodial Account Agreement. Paragraph 10 provides:

> "any expense, including attorney[] fees, incurred by [A.G. Edwards] . . . in defense in an action brought by [Wattenbarger] . . . to recover damages for the activities of [A.G. Edwards] or its agents or employees in handling any account of the [Wattenbargers] shall be borne solely by the account, or the [Wattenbargers] as the case may be, should [A.G. Edwards] prevail."

The Wattenbargers argue that this clause only applied to IRA-account disputes because of the language "in handling any account." This argument is based on another portion of the agreement that provides "individual retirement account (the 'account')," arguably defining "account" as an "IRA." We decline to read the contract so narrowly. In light of the breadth of other provisions of the agreement, it seems unlikely that the parties sought to limit their entitlement to fees to situations dealing with an IRA. Accordingly, because the Wattenbargers brought an action for damages based on the respondents handling of an account, if the respondents are prevailing parties, then they are entitled to attorney fees.

The respondents argue that they are also entitled to fees under Idaho Code section 12-120(3). The district court refused to award fees under section 12-120(3) because the respondents did not argue that they were entitled to fees under that section in their initial fee request. The district court was correct that a party is required to specify the basis for its fee request in its I.R.C.P. 54(e)(5) fee request. *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141

19

Idaho 716, 720–21, 117 P.3d 130, 134–35 (2005). The district court did not err in denying the fee request.

The district court found the respondents to be the prevailing parties because they sought dismissal based on the arbitration clause, they were granted dismissal, and the district court's order of dismissal constitutes a final judgment. We addressed a similar situation in *Deelstra v. Hagler*, 145 Idaho 922, 188 P.3d 864 (2008). In that case, the district court awarded attorney fees incurred in the course of arbitration and for a motion to dismiss the case after the arbitration was concluded. *Id.* at 924, 188 P.3d at 866. We found that the district court was not entitled to award fees for the arbitration itself, but correctly ordered fees for the motion to dismiss the underlying district court action. *Id.* at 925, 188 P.3d at 867. We noted that if fees were awardable for any proceedings leading up to arbitration, they should be awarded by the district court rather than the arbitrator. *Id.* We recently reached a similar result in *Grease Spot, Inc. v. Harnes*, 148 Idaho 582, 586, 226 P.3d 524, 528 (2010). In that case, the appellants were awarded partial attorney fees from a successful motion to compel arbitration. *Id.* We found that the appellants were the prevailing parties because the action was a civil action and compelling arbitration ended consideration of the merits of the action and resulted in a judgment in favor of the appellants. *Id.* Thus, under the logic of *Deelstra* and *Harnes*, successfully dismissing an action on the basis of an arbitration clause is sufficient to confer the prevailing party status necessary for an award of attorney fees.

Furthermore, we find the amount of fees awarded by the district court to be reasonable. The district court is required to consider the factors listed in I.R.C.P. 54(e)(3) in determining the amount of an attorney fee award. Idaho R. Civ. P. 54(e)(3). The rule does not require the district court to make specific findings on each factor. *Smith v. Mitten*, 140 Idaho 893, 902, 104 P.3d 367, 376 (2004). Consequently, where, as here, the district court's opinion shows that it considered the rule 54(e)(3) factors and the amount of fees awarded is not demonstrably excessive, the amount of fees awarded should be affirmed.

In conclusion, the district court properly found that the respondents were entitled to attorney fees under the contract and that they were prevailing parties. The district court also awarded an appropriate amount of fees. Accordingly, the district court's decision to award attorney fees is affirmed.

## I.
## Attorney Fees on Appeal

Respondents presented the same bases for their request of attorney fees on appeal as they did for their request for fees in district court. They argue that they are entitled to fees based on article XII, paragraph 10 of the custodial account agreement and Idaho Code section 12-120(3). As discussed above, the respondents are entitled to fees under the contract. Finding the contract provides a basis to award fees, we need not address the request for fees under section 12-120(3). Thus, we award respondents their attorney fees on appeal.

## IV.

Because the arbitration agreement is valid, the claims presented fall within the scope of the agreement, and the agreement is not unconscionable, the district court's judgment and award of attorney fees to the respondents is affirmed. We award the respondents their costs and attorney fees on appeal.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.