30 P.3d 940

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL NO. 672, a recognized collective bargaining agent, Plaintiff–Counterdefendant–Appellant,**

v.

**CITY OF BOISE CITY, a municipal corporation; H. Brent Coles, Mayor; Sara Baker, M. Jerome Mapp, Caroline Terteling, Paula Forney, Anne Stites Hausrath and Mike Wetherell, City Council Members, Defendants–Counterclaimants–Respondents.**

No. 25640.

Supreme Court of Idaho,
Boise, December 2000 Term.

May 2, 2001.

Rehearing Denied July 23, 2001.

Nevin, Herzfeld & Benjamin, Boise, for appellant. Alan C. Herzfeld argued.

Elam & Burke, P.A., Boise, for respondents. Bobbi K. Dominick argued.

WALTERS, Justice

In this appeal, the International Association of Firefighters, Local No. 672 (the Union) seeks review of a district court decision denying the Union declaratory relief and an injunction precluding the City of Boise from implementing a subcontract with the Idaho National Guard (IDANG) to provide Air Rescue Fire Fighting (ARFF) services at the Boise municipal airport. We hold that the contracts with IDANG do not violate the Idaho Constitution or the Idaho Civil Service Act. We further hold that the City is obligated under the collective bargaining agreement with the Boise firefighters to arbitrate grievances and also is obligated by statute to negotiate in good faith the terms and conditions of the firefighters' employment. Accordingly, we affirm in part but reverse the decision of the district court on the two latter grounds, and we remand the matter for entry of a declaratory judgment in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 1967, the Boise Fire Department has provided ARFF services for the protection of civilian and commercial aircraft at the Boise airport. The department operated out of Station # 7 and consisted of a division chief and nine firefighters, with two crash rescue vehicles and a command vehicle. At nearby Gowen Field, IDANG maintained a daytime ARFF contingent, and through a joint fire-protection agreement with the City of Boise dating at least as far back as 1974, IDANG has aided in ARFF responses at the Boise airport. Under these joint agreements, the Boise Fire Department was the primary provider.

After study, public comment, and discussions with the Union and IDANG employees, the Boise City Council in March of 1998 decided to continue this cooperation with IDANG to maximize the resources of both entities. The City's proposal called for responsibility for crash, fire and rescue efforts at the Boise airport and Gowen Field to be consolidated at the existing fire station at Gowen Field. The proposed agreement called for an annual payment of $450,000 by the City to IDANG plus reimbursement to the National Guard for all supplies used in responding to civil emergencies. In June of 1998, the City Council adopted a resolution authorizing the Mayor and the City Clerk to execute an ARFF Implementation Agreement between the Boise Air Terminal and IDANG and an Airport Joint Use Agreement. These agreements transferred primary responsibility to IDANG for airport firefighting and crash rescue services for all aircraft emergencies, whether civilian or military, and allowed the City to reassign firefighters at Station 7 who were dedicated solely to ARFF duties.

The Union construed the action of the City to be a subcontract of ARFF services, which the Union immediately grieved pursuant to the Collective Labor Agreement (CLA) in effect with the City at the time. The CLA,

which covers the terms and conditions of employment of the City's firefighters, first came into existence in 1971 following the passage of the Idaho Firefighters Collective Bargaining Act, which has been codified as I.C. § 44–1801 *et seq.* From 1975, the CLA has incorporated by reference the Boise City Service Ordinances, Rules and Regulations and included a grievance and arbitration mechanism for the resolution of contractual disputes. In 1976, negotiations between the City and Local 672 of the Union resulted in an addition to the CLA of a Management Rights clause, which has remained essentially unchanged in the parties' successive CLAs.

In their grievance dated June 16, 1998, the Union sought rescission of the Airport Joint Use Agreement and the ARFF Implementation Agreement, which the Union contended would usurp bargaining unit work in violation of Article 2, Section I (Management Rights) and Article 6, Section J (Rules and Regulations) of the CLA. An amended grievance dated July 23, 1998, specifically alleged that the City's impending contracting out of civilian ARFF services would violate the CLA in the following manner:

(1) The services traditionally and historically performed by the ARFF Company were bargaining unit work.

(2) The "contracting" clause of Article 2, Section I (Management Rights) was not intended to, and does not allow the City to contract out bargaining unit work.

(3) The contracting out of civilian ARFF services would violate Boise City Civil Service ordinances that have been incorporated by reference into the CLA by Article 6, Section J (Rules and Regulations).

(4) The contracting out would violate the requirement of Article 5, Section E (Minimum Manning) that all ARFF vehicles be manned with a minimum of one qualified firefighter, referring to Boise City Fire Department firefighters.

(5) The contracting out would violate Appendix A3 (Special Teams), by depriving members of the Airport Engine Company who are ARFF certified of specialty pay.

(6) The impending displacement and involuntary transfer of Boise Fire Department ARFF Company members would violate Article 2, Section D (Discrimination) in that it would adversely affect those members' compensation, terms, conditions or privileges of employment because of non-meritorious factors or factors which do not constitute *bona fide* occupational requirements.

The existing CLA expired, and some time before the Union and the City renegotiated a new agreement, the City signed agreements contracting all ARFF services from IDANG. On July 31, 1998, the Union filed a complaint for declaratory relief as to whether the City's actions violated the Civil Service statutes, a contractual obligation to arbitrate the grievance, and the City's statutory obligations under the collective bargaining statutes. The complaint also requested injunctive relief, seeking to forestall implementation of the newly formed agreements between the City and IDANG, pending arbitration.

On August 14, 1998, the Union submitted a second amended grievance to arbitration pursuant to the CLA. Although the City did not respond to the amended grievance, the City answered the complaint and counterclaimed. In its pleadings, the City sought a declaration from the district court that the City was not required either to arbitrate or to collectively bargain with the Union over its decision to contract out civilian ARFF services to IDANG.

An evidentiary hearing on the Union's motion for preliminary injunction was held on August 27, 1998. On that date, the parties stipulated to stay implementation of the Airport Joint Use Agreement and the ARFF Implementation Agreement pending the Court's decision on the motion for an injunction. The district court issued a memorandum decision denying the motion on October 8, 1998.

The Union was granted leave to amend its complaint to reflect its prayer seeking declaratory relief on the same grounds originally asserted in its request for injunctive relief. Thereafter, the Union moved the district court for a final judgment. On May 7, 1999, the district court issued a final judgment denying all declaratory relief sought "consistent with and for the reasons stated in the October 8, 1998, memorandum decision."

On appeal, the Union raises three issues:

1. Do the Airport Joint Use Agreement and the ARFF Implementation Agreement between the City and IDANG violate Idaho's Civil Service laws and the Idaho Constitution so as to be rendered invalid and unconstitutional?

2. Does the Collective Labor Agreement between the parties make arbitration of the Union's grievance compulsory?

3. Does the Collective Bargaining Act (I.C. § 44–1801 *et seq.*), require the parties to negotiate in good faith the City's decision to contract out ARFF services to IDANG?

## STANDARD OF REVIEW

■■■ A district court's findings of fact will not be set aside unless they are clearly erroneous. *Carney v. Heinson*, 133 Idaho 275, 985 P.2d 1137 (1999); I.R.C.P. 52(a). Conclusions of law must be "sustained by the facts found." *Chen v. Conway*, 121 Idaho 1000, 1004, 829 P.2d 1349, 1353 (1992), *citing Willis v. Willis*, 33 Idaho 353, 357–58, 194 P. 470, 472 (1920). When an action is tried to a court without the benefit of a jury, the determination as to credibility of witnesses, weight to be given their testimony and its probative effect and inferences, and conclusions to be drawn therefrom, are all matters within the province of the trial court. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 9 P.3d 1204 (2000). A reviewing court will not substitute its view for that of the district judge. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). On appeal, a reviewing court will not disturb the district court's findings if supported by substantial and competent evidence; however, the reviewing court is not bound by legal conclusions of the district court and is free to draw its own conclusions from the facts presented. *Cluff v. Bonner County*, 126 Idaho 950, 895 P.2d 551 (1995).

## DISCUSSION

**1. Does the City's decision to subcontract ARFF services violate Idaho Civil Service Laws and thus Idaho Constitution Article XII, Section 2?**

■■■ Article XII, section 2 of the Idaho Constitution provides: "Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." The City of Boise, a municipal entity under the Constitution, established a civil service system for employees of the City through enactment of Ordinances 2–03–01 through 2–03–23. The stated purpose behind the creation of the civil service system is to provide a means whereby employees of the cities of the State of Idaho may be selected, retained and promoted on the basis of merit and performance of duties, thus effecting economy and efficiency in the administration of city government. *See* I.C. § 50–1601. Adoption of a civil service system is voluntary and not required either by statute or by the Idaho Constitution.

■■■ The Union argues that the civil service statutes not only require civil service employees to provide all city services but also prohibit the subcontracting of work to non-civil service employees. The Union argues that the agreements between the City and IDANG, which effectively replaced civil service employees with non-civil service personnel to provide fire suppression and ARFF services at the Boise airport, are in violation of the statutes and the Constitution. Thus, the question before the Court is one of statutory interpretation, which we freely review. *Idaho Fair Share v. Public Utilities Comm'n*, 113 Idaho 959, 751 P.2d 107 (1988).

The statutory civil service scheme governs "employees" of cities, and does not address employer-employee relationships between cities and private individuals or entities or other governmental entities. The Boise firefighters as City employees are covered by the civil service system, I.C. § 50–1601 *et seq.* The IDANG firefighters, who were to provide ARFF services under the 1998 agreements with the City, are federal government employees, not subject to the Idaho civil service system.

The civil service statutes regulate how positions of employment are filled and dictate the method of appointment, promotion, removal and discharge. I.C. §§ 50–1604, –1606, –1609. The act requires appointment to positions after competitive exams and protects employees by providing that all applicants thereafter appointed "shall hold office,

place, position or employment only during good behavior, and any such person may be removed, discharged, suspended without pay, demoted, reduced in rank, deprived of vacation privileges" for cause shown. I.C. § 50–1604.

Public services are to be performed wherever practicable by public employees. In this case, ARFF work had been performed jointly by the Boise and IDANG firefighters, consistent with I.C. § 50–321, which allows cities to cooperate with the federal government in operating airport facilities, and I.C. § 67–2328, which provides for agreements between the city and the federal government for ARFF services. By virtue of the 1998 agreements with the City, all ARFF services were shifted to IDANG. Nevertheless, none of the Boise firefighter positions was lost because of the agreements; the firefighters were simply reassigned to different stationhouses or given different firefighting responsibilities. Had the agreements resulted in termination or demotion of existing civil service employees, the City's action would have been in conflict with the Civil Service Act and violated the merit system of filling public employment positions. Although the agreements will likely make it unnecessary for the City to hire additional new employees for some time, this does not constitute a violation of the Act. Accordingly, the district court properly concluded that the agreements did not violate either the Civil Service Act or the Idaho Constitution.

## 2. Does the Collective Labor Agreement between the parties make arbitration of the Union's grievance compulsory?

 Where parties have entered into an agreement calling for arbitration as a means of settling a dispute, the court's scope of review is confined to ascertaining whether the party seeking arbitration is making a claim, which on its face is governed by the parties' contract. *Western Constr. Inc. v. Oregon–Southern Idaho and Wyoming Dist. Council of Laborers and Laborers Local Union 267,* 101 Idaho 145, 609 P.2d 1136 (1980), citing *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1406–07 (1960). The question of arbitrability is a question of law properly for determination by

the court. *Oil, Chemical & Atomic Workers Int'l Union, AFL–CIO Local 652 v. EG & G Idaho, Inc.,* 115 Idaho 671, 769 P.2d 548 (1989).

 Article 6 of the CLA specifically provides for grievances and sets out the procedures to be applied when a grievance is filed. Section A(1)(a) of Article 6 defines a grievance as "a complaint by one or a group of members, or UNION, involving the interpretation, application of this AGREEMENT or written policies and rules of the Fire Department, or disciplinary action." The Union asserts on appeal that the issues raised in its grievance necessarily require an interpretation of the terms of the CLA and are thus subject to arbitration. The Union further posits that the threshold decision as to the arbitrability of the grievance was overlooked by the district court, which simply assumed jurisdiction and considered the merits of the parties' arguments.

The complaint filed in the district court requested a preliminary injunction enjoining the City from implementing the agreements with IDANG pending arbitration of the grievance. The complaint also sought a declaration that the CLA between the City and the Union required arbitration of the Union's grievance. Notably, the Union's complaint did not pray for an order to compel arbitration nor did it assert a breach of a contract to arbitrate for which the Union should be compensated by an award of damages.

In its grievance, the Union sought rescission of the Airport Joint Use Agreement and the ARFF Implementation Agreement entered into between the City and IDANG on the grounds that the agreements violated various provisions of the CLA. The provisions referred to in the Union's grievance include: the Management Rights Clause (Article 2, Section I), the Rules and Regulations (Article 6, Section J), the Minimum Manning Clause (Article 5, Section E), the clause on Discrimination (Article 2, Section D), and the clause on Special Teams that is found in Appendix A3. The City disputed that the claims raised by the Union are grievances subject to arbitration under the CLA.

Before resolving whether the disputes at issue here constitute "grievances" subject to arbitration, we recognize that arbitration is a favored remedy. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648, 656–57 (1986). *See Bingham County Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 665 P.2d 1046 (1983) (Arbitration allows parties to settle their disputes without expending time and unnecessary expense on needless litigation.). A court reviewing an arbitration clause will order arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc., supra.* Doubts are to be "resolved in favor of coverage." *Id; Local Union No. 370 of Internt'l Union of Operating Engineers v. Morrison–Knudsen Co., Inc.*, 786 F.2d 1356 (9th Cir.1986), *citing United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409, 1417–18 (1960). *See Iowa City Community School Dist. v. Iowa City Educ. Ass'n*, 343 N.W.2d 139, 141 (Iowa 1983); *Mayor and City Council of Baltimore v. Baltimore Fire Fighters, Local 734*, 93 Md.App. 604, 610, 613 A.2d 1023, 1026 (1992); *Howard Co. Bd. of Educ. v. Howard Co. Educ. Ass'n*, 61 Md.App. 631, 487 A.2d 1220 (1985); *Mayor & City Council of Baltimore v. Baltimore City Fire Fighters*, 49 Md.App. 60, 430 A.2d 99 (1981), *cert. denied*, 291 Md. 771 (1981); *West Fargo Pub. School Dist. v. West Fargo Educ. Ass'n*, 259 N.W.2d 612, 620 (N.D.1977); *Corvallis School Dist. v. Corvallis Educ. Ass'n*, 35 Or.App. 531, 535, 581 P.2d 972, 974 (1978). In further support of a strong policy in favor of arbitration, this Court has expressly stated that public bodies in Idaho are bound by their agreements to arbitrate disputes. *Bingham County Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 665 P.2d 1046 (1983); *Bear Lake Educ. Ass'n v. School Dist. 33*, 116 Idaho 443, 447, 776 P.2d 452, 456 (1989).

The City maintains that the contracting of ARFF services is squarely within the express language of the Management Rights Clause, which gives the City broad powers to enter into a cooperative agreement with another governmental agency and involves the ordinary and customary function of government. Article 2, Section I, the Management Rights Clause, provides:

BOISE CITY shall retain the exclusive right to exercise the regular and customary functions of management, including but not limited to directing the activities of the Department, determining levels of service and methods of operation, including contracting of fire Department services to other agencies; the introduction of new equipment; the right to hire, lay-off, transfer and promote; to discipline and to discharge its members for cause; to determine work schedules and to assign work; to determine the amount of apparatus in the main or reserve fleet. Provided, that nothing in this Article shall nullify: (1) Any provisions elsewhere in this AGREEMENT, or, (2) The City's statutory obligation to negotiate with the Union pursuant to Chapter 18, Title 44, Idaho Code.

The district court accepted the City's position, finding that the decision to implement the contracts transferring all ARFF services to IDANG was not arbitrable because those agreements fall within management rights. The court ruled as a matter of law that the management rights portion of the contract was not ambiguous and that the contract reserved to the City the right to contract with other governmental agencies, without any obligation to bargain on the issue. We disagree with the district court's determination.

The benefit bargained for in the CLA, which the Union claims it is being denied, is the right to continue to provide ARFF services at the Boise airport. The ARFF team of firefighters is one of the Special Teams expressly mentioned in the CLA, which is certified to provide aircraft rescue firefighting services at the Boise airport. Also referenced in Article 5, Section E of the CLA is a requirement that all ARFF vehicles "shall be manned with a minimum of one qualified fire fighter unless FAA requirements or safety conditions warrant more personnel." The dispute as to the elimination of ARFF positions for Boise firefighters is one that necessarily concerns an interpretation and application of not only the management rights

clause, but also those sections of the CLA mentioned above, which were implicated by the City's action to enter into exclusive contracts with IDANG for the provision of ARFF services. Indeed, the management rights clause, which gives broad powers to the City to contract out services also provides that "nothing in this Article shall nullify (1)[a]ny provisions elsewhere in this Agreement, or (2) the City's statutory obligation to negotiate with the Union...." Therefore, the issues raised by the Union constitute a grievance under the CLA as it cannot be said with "positive assurance" that the contracting out dispute does not "concern" the "application and interpretation" of Article 5, Section E and the Special Teams Section of the CLA. *See AT & T Technologies, supra,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–57 .

The district court did not apply Section 6A of the CLA to analyze whether the contracting out of firefighting services to IDANG was such a dispute "involving the interpretation and application" of Article 2, Section I (Management Rights), Article 6, Section J (Rules and Regulations), Article 5, Section E (Minimum Manning), Article 2, Section D (Discrimination), and Appendix A3 (Special Teams). Consequently, it was error for the district court to conclude from a reading of the CLA limited to the management rights article that the contracts with IDANG were within the exclusive discretion of the City and authorized by the CLA. To the contrary, because the dispute regarding the contracting out of services that eliminated all Boise ARFF positions is within the scope of grievances subject to arbitration under the CLA, we hold that the district court should not have reached the merits of the Union's grievance, but instead should have recognized the enforceability of the arbitration provision.

**3. Does the Collective Bargaining Act, I.C. § 44–1801 *et seq.* require the City to negotiate its decision to contract out firefighting services to IDANG?**

 Pursuant to the Collective Bargaining Act, I.C. § 44–1801 *et seq.*, the obligation of the city "shall be ... to meet and confer in good faith with the representative or representatives of the bargaining agent ... for collective bargaining purposes." I.C. § 44–1804. The firefighters shall have the right to bargain collectively with their respective cities and to be represented by a bargaining agent in such bargaining process "as to wages, rates of pay, working conditions and all other terms and conditions of employment." I.C. § 44–1802. The issue raised by the Union on appeal is whether the contracting out of services previously performed by members of the bargaining unit is covered by the phrase "all other terms and conditions of employment" and thus subject to mandatory collective bargaining.

In the context of private employer-employee relations, the United States Supreme Court has held that the subject of contracting out is within the literal meaning of the phrase "terms and conditions of employment,"[1] particularly where, under the facts of the case, the contracting out of work performed by members of an established bargaining unit resulted in termination of member employment. *Fibreboard Paper Products Corp. v. National Labor Relations Board,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). The Union urges that the *Fibreboard* decision is persuasive authority in this case, even though the City is a public-sector employer, because of the nearly identical language in the federal and the Idaho collective bargaining statutes. The City contends that contracting out is not a subject that pertains to the terms and conditions of public employment and that the district court correctly held contracting out to be a management decision regarding the exercise of joint powers between the United States government and Boise City, under I.C. §§ 67–2326, –2328, and thus not negotiable.

 Determining the scope of issues on which the City is required to bargain in good faith entails initially an interpretation of the Collective Bargaining Act. Statutory interpretation begins with the literal words of the statute, giving the language its plain,

---

**1.** The phrase is found at Section 8(a)(5)(d) of the National Labor Relations Act, which imposes a mutual obligation on the employer and the representative of the employees "to confer in good faith with respect to wages, hours, and other terms and conditions of employment."

obvious and rational meanings. *Wolfe v. Farm Bureau Ins.Co.*, 128 Idaho 398, 913 P.2d 1168 (1996). When interpreting the meaning of statutory language, a court will attempt to ascertain legislative intent. *Kelso & Irwin, P.A. v. State Ins.Fund*, 134 Idaho 130, 997 P.2d 591 (2000). The appellate court conducts free review of issues of statutory interpretation. *City of Sun Valley v. Sun Valley Co.* 128 Idaho 219, 912 P.2d 106 (1996).

▆▆▆ Idaho law with regard to mandatory collective bargaining follows the provisions of the federal National Labor Relations Act (NLRA) and should be interpreted consistently with it. *See Interform Co. v. Mitchell*, 575 F.2d 1270 (9th Cir.1978). Federal case law as it has developed under the NLRA, although not binding, is persuasive in the application of the Idaho Collective Bargaining Act. *See State ex rel. Kidwell v. Master Distributors, Inc.* 101 Idaho 447, 615 P.2d 116 (1980).

The contracting out of work being done by an employee of a bargaining unit has been held to be a subject about which the NLRA § 8(a)(5)(d) requires the employer and the employee to bargain collectively. *Fibreboard, supra,* 379 U.S. at 210, 85 S.Ct. at 402–03, 13 L.Ed.2d at 238. The Court noted that the subject matter of the dispute was well within the literal meaning of the phrase "terms and conditions." *Id.* In support of its decision, the Court considered that the company had merely replaced existing employees with those of an independent contractor to do the same work under similar conditions of employment. *Id.* The Court concluded that to require the employer to bargain about the matter would not significantly abridge his freedom to manage the business. *Id.* As further justification, the Court viewed its decision as effectuating one of the primary purposes of the NLRA to "promote the peaceful settlement of industrial disputes by subjecting labor-management controversies to the mediatory influence of negotiation." *Id.*

In the instant case, the City's decision to contract out ARFF services lies within the Idaho statute's sweeping phrase, "all other terms and conditions of employment." I.C. § 44–1802. Although the district court determined that the employees' terms and conditions of employment were not in issue because "[n]o Boise City firefighter will be demoted, replaced, terminated nor will any of their benefits be affected by the agreement between Boise City and [IDANG]," we do not perceive the terms and conditions of the firefighters' employment to be so limited or dependent upon the effect of the contracting out to IDANG. The nature of the employment included the provision of ARFF services requiring Boise firefighters with specialized training and certification. ARFF services continued to be necessary to the operation of the Boise airport, and through its exclusive agreement with IDANG, the City merely sought to transfer all responsibility for ARFF services from the Union to IDANG. One treatise explains:

> Congress has noted that, as shown by both private and public sector experience, statutes that permit employees to organize, bargain collectively and participate through labor organizations of their own choosing, safeguard the public interest, contribute to the effective conduct of public business, and facilitate and encourage the amicable settlement of disputes between workers and their employers concerning conditions of employment.

48 Am Jur 2d, *Labor and Labor Relations* § 325. By enacting the Collective Bargaining Act, the Idaho legislature sought to promote negotiations to resolve disputes and provided a statutory framework to follow where collective bargaining failed to yield an agreement. The merits of the City's decision to contract out ARFF services to IDANG are "not so clear as to eliminate the need for discussion," and may even have prevented the present lawsuit. *See VanBuren Public School Dist. v. Wayne County Circuit Judge,* 61 Mich.App. 6, 26, 232 N.W.2d 278, 288 (1975).

▆▆▆ Applying the final rationale of *Fibreboard,* we examine whether requiring the City to collectively bargain with the Union will abridge the City's management rights. The determination as to level of service, including special ARFF teams, is expressly mentioned in the prior collective bargaining agreement as being a management right; however, no changes in the level of service

will result from the agreements with IDANG, only the identity of those performing the services. A requirement that the City bargain collectively with the Union does not conflict with or preclude the City's exercise of joint powers with the federal government, authorized under I.C. §§ 67–2326, 2328. We conclude, therefore, that mandatory negotiations on the subcontracting issue would not significantly interfere with the City's management rights.

For the above reasons, we hold that the firefighters were entitled to collectively bargain in anticipation of the City's actions to replace Union employees with IDANG firefighters to perform the work previously performed by union members. By refusing to negotiate with the Union, the City violated the Act. We do not suggest that the City's management decision to contract exclusively with IDANG was an unreasonable decision, but we reverse the district court's conclusion that there existed no obligation on the part of the City to negotiate in good faith on the contracting issue.

## CONCLUSION

Neither the Idaho Constitution nor the civil service statutes bar the City from contracting for ARFF services with non-civil service employees. The terms of the Collective Labor Agreement between the City and its firefighters and the Collective Bargaining Act, however, require that the dispute regarding the contracting out of services be arbitrated and negotiated, respectively. We, therefore, affirm the district court's decision in part but reverse it in part and remand the case for entry of a declaratory judgment that the City was obligated to arbitrate the firefighters' grievance pursuant to the terms of the Collective Labor Agreement and, as required by statute, the City had a duty to negotiate in good faith its proposed agreements with IDANG. No costs or fees on appeal are allowed.

Chief Justice TROUT, Justices SCHROEDER and KIDWELL and Judge CARLSON, pro tem, concur.