**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51563**

| | |
|---|---|
| JACQUELYN ZIGMOND, an individual, )<br>)<br>      **Plaintiff-Respondent,** )<br>)<br>v. )<br>)<br>MORT CONSTRUCTION, INC., dba )<br>MONOGRAM HOMES, )<br>)<br>      **Defendant-Appellant.** )<br>) | **Filed: December 3, 2024**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry D. McHugh, District Judge.

Order denying motion to dismiss, or in the alternative, to stay pending arbitration, <u>reversed</u>; and <u>case remanded</u>.

Roberts Freebourn, PLLC; Kevin W. Roberts, Spokane, for appellant. Kevin W. Roberts argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC; Jedediah A. Bigelow, Idaho Falls, for respondent. Jedediah A. Bigelow argued.

_____

HUSKEY, Judge

Mort Construction, Inc., dba Monogram Homes (Monogram) appeals from the district court's order denying its motion to dismiss, or in the alternative, to stay pending arbitration. Monogram contends Jacquelyn Zigmond signed a contract for a warranty and, therein, agreed to arbitration as the exclusive remedy for any warranty disputes. As a result, argues Monogram, Zigmond cannot bypass arbitration and seek judicial adjudication of her claims. Zigmond contends the arbitration clause is not binding because at the time she signed the contract, she was not provided with the warranty documentation and, therefore, the language from the warranty was not incorporated into the document she signed. Alternatively, Zigmond argues the disputed issue was expressly excluded from the warranty and, therefore, is not subject to the arbitration requirement. We reverse the order of the district court and remand this case for further proceedings consistent with this opinion.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Zigmond purchased a newly constructed home from Monogram in August 2021. Monogram offered an express one-year builder home warranty and a six-year limited home warranty through a national warranty company. Under the builder warranty, the builder agreed to fix enumerated items within the first twelve months of ownership. Thereafter, the six-year limited warranty provided coverage for designated structural elements and explicitly indicated there are no warranties that extend beyond the descriptions within the policy.

Zigmond did a walkthrough of the home with a Monogram representative on July 29, 2021. Closing occurred on or around August 2, 2021, and on August 4, 2021, Zigmond signed a Residential Home Warranty Company (RWC) application for the six-year limited warranty coverage on the home.[1] The application included details about the home, maximum coverage limits, and required actions for the warranty program to be validated. Line number eleven of the application states, "Signatures: I/We have received and have read the RWC Warranty book and I/we understand the RWC Warranty book." Zigmond's name was printed on the form, and she signed and dated below her printed name. A Monogram representative had previously signed the form. It is undisputed that Zigmond received a copy of the RWC warranty book no later than August 6, 2021.

On December 31, 2022, Zigmond's concrete driveway began delaminating. Zigmond initially reached out to Monogram. Zigmond then contacted RWC's warranty resolution department to report the defect and request warranty performance. In her email, Zigmond included the validation number of the policy and an effective date of August 2, 2021. RWC responded, indicating the driveway was expressly excluded under the warranty. Zigmond had no further communication with RWC and did not attempt to further resolve the dispute through the processes outlined in the RWC book.

Zigmond sent a Notice and Opportunity to Repair to Monogram. Monogram responded, disputing the claims made in the notice. No repairs were made and Zigmond filed suit, asserting claims for breach of contract and breach of warranty of workmanship. Monogram filed a motion

---

[1] The parties disagree about the date of closing. Regardless, there is nothing in the record to indicate the warranty application was a part of the closing packet nor was it required to be signed at closing.

to dismiss pursuant to Idaho Rule of Civil Procedure 12(b), or in the alternative, to stay the proceedings for arbitration pursuant to Idaho Code §§ 7-901, -902. Monogram asserted that pursuant to the RWC warranty provisions, all unresolved warranty issues were subject to binding arbitration. As a result, Monogram argued, Zigmond's sole and exclusive remedy was arbitration, and her complaint should be dismissed or stayed pending the outcome of arbitration.

The district court denied Monogram's motion to dismiss, which was treated as a motion for summary judgment, because there was a genuine dispute of material fact regarding whether Zigmond was sufficiently aware of the arbitration provision and whether she had received the RWC warranty book prior to signing to RWC warranty application. Additionally, the district court determined the issues related to the driveway were specifically excluded under the express warranty and therefore not subject to arbitration. Monogram appeals.

## II.

## STANDARD OF REVIEW

"When ruling on a motion to compel arbitration, the district court applies the same standard as if ruling on a motion for summary judgment." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010). Accordingly, the court exercises free review over questions of arbitrability and may draw its own conclusions from the evidence presented. *T3 Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 738, 745, 435 P.3d 518, 525 (2019); *Mason v. State Farm Mut. Auto Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007). "A court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are to be 'resolved in favor of coverage.'" *Storey Constr., Inc. v. Hanks*, 148 Idaho 401, 412, 224 P.3d 468, 479 (2009) (quoting *Int'l Assoc. of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 168, 30 P.3d 940, 946 (2001)).

Determining the scope of an arbitration clause is a question of contractual interpretation. In determining the meaning of a contract, "[w]hen the language of a contract is clear and unambiguous," its meaning and legal effect are questions of law over which we exercise free review. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). "A contract is ambiguous if it is reasonably subject to conflicting interpretations," which will render interpretation of the contract a question of fact. *Id.* The relevant inquiry in determining whether

3

a contract is ambiguous is the meaning intended by the parties at the time of contracting, not at some future time. *Id.*

## III.

## ANALYSIS

Monogram contends the district court erred in denying its motion to dismiss, or in the alternative, stay pending arbitration because Zigmond signed and acknowledged that she had read and understood the warranty when she completed the RWC application. The letter from Monogram that she received at closing further instructed her to read through the warranty program information in the warranty book. Therefore, Monogram argues, Zigmond had access to, read, and understood the warranty and the terms contained within. As a result, Zigmond is bound by and limited to mandatory arbitration for her claims regarding the driveway. Monogram argues the complaint should be dismissed because Zigmond expressly waived all claims regarding the workmanlike condition of the home when she accepted the warranty. Zigmond argues she did not receive the RWC warranty book at the time she signed the warranty application and, therefore, the terms could not be incorporated as an integrated part of the contract under contract law. Zigmond argues her claim is not subject to arbitration because any damage to the driveway was expressly excluded under the warranty and, therefore, is not subject to the arbitration provision. Finally, Zigmond further argues that grounds exist to revoke the warranty under the Idaho Consumer Protection Act, I.C. § 7-901, because Monogram engaged in unlawful practices.

**A.      Zigmond's Notice of the RWC Warranty Book**

Monogram argues that when Zigmond applied for the RWC warranty, she signed the application, thereby expressly acknowledging that she had both read and understood the RWC warranty book and her signature constitutes agreement to the terms. Furthermore, the notice regarding the RWC warranty book was conspicuous, and the arbitration provision was clear in the RWC warranty book and referenced on the warranty application. Zigmond argues the arbitration provision is not binding because the RWC warranty book was not provided to her for review prior to, or at the time, she signed the application. Absent an opportunity to review the terms prior to signing the contract, Zigmond argues it should not be considered integrated into the agreement.

Idaho Code § 7-901 states in part:

> A written agreement to submit any existing controversy to arbitration or a
> provision in a written contract to submit to arbitration any controversy thereafter

arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Arbitration is a contractual right, and arbitration clauses are subject to traditional contract principles. *Shake Out, LLC v. Clearwater Construction, LLC*, 172 Idaho 622, 628, 535 P.3d 598, 604 (2023).

When entertaining a motion to compel or stay arbitration, the court must limit its inquiry to whether there is an agreement to arbitrate. *Loomis, Inc. v. Cudahy*, 104 Idaho 106, 109, 656 P.2d 1359, 1362 (1983). Where parties have entered into an agreement calling for arbitration as a means of settling a dispute, the court's scope of review is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the parties' contract. *Int'l Ass'n of Firefighters*, 136 Idaho at 167, 30 P.3d at 945. Whether an arbitration clause in a contract requires arbitration of a particular dispute or claim depends upon its terms. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 46, 72 P.3d 877, 886 (2003). *See also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (absent some ambiguity in agreement, it is language of contract that defines scope of disputes subject to arbitration); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("[T]he FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties."). Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The district court reviewed the motion to dismiss, or in the alternative, stay pending arbitration under the standards for summary judgment. A motion to dismiss based upon the presence of an arbitration agreement is treated as a motion to compel arbitration. *Wattenbarger*, 150 Idaho at 317, 246 P.3d at 970. The district court considered Zigmond's reliance on the *Wattenbarger* case when deciding the motion and found that although the cited cases within *Wattenbarger* were not binding authority, the arguments were persuasive. Specifically, the district court looked to the dissent in *Loomis* which stated, "the party who may be contractually bound by an incorporated document must have had, at bare minimum, the opportunity to discover the terms of the agreement prior to entering it." *Loomis*, 104 Idaho at 118, 656 P.2d at 1372 (J. Bistline, dissenting). The district court held that disputed facts existed regarding whether the incorporated arbitration agreement was sufficiently called to Zigmond's attention and whether Zigmond received a copy of the RWC warranty book prior to signing the application. Because a dispute

over a material fact existed, the district court declined to grant summary judgment and compel arbitration.

On appeal, Monogram argues that because Zigmond signed the warranty application indicating that she received, reviewed, and understood the RWC warranty book, she cannot now claim she was not provided with the RWC warranty book. Zigmond argues that because the RWC warranty book was not available when she signed the warranty application, the terms of it could not be incorporated because it was not readily available for inspection. Zigmond relies on *Wattenbarger*'s proposition that "the terms of another agreement not signed by the parties can be incorporated into the signed agreement by reference when the unsigned terms are readily available for inspection by the parties." *Wattenbarger*, 150 Idaho at 320, 246 P.3d at 973. Zigmond highlights the *Wattenbarger* decision's reliance on the dissenting opinion in *Loomis* which argued that it was "a travesty to obligate [a party] to arbitrate in accordance with certain procedures of which she had no knowledge." *Loomis*, 104 Idaho at 119, 656 P.2d at 1372. The dissent in *Loomis* noted that an incorporated document must be known or easily available to the parties. *Id.* The *Lovey* opinion explained the factors for consideration to determine whether a party lacks knowledge:

> [L]ack of knowledge can be shown by lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language; the lack of opportunity to study the contract and inquire about its terms; or disparity in the sophistication, knowledge, or experience of the parties.

*Lovey*, 139 Idaho at 43, 72 P.3d at 883 (citations omitted).

Zigmond's claim, however, is belied by the record. Zigmond signed the RWC warranty application indicating that she "received and have read the RWC Warranty book and I/we understand the RWC Warranty book."

> It is well established that a person who has executed a contract is presumed capable of understanding the nature and effect of such contract. As a corollary, a written contract cannot be avoided by one of the parties to it on the ground that he signed it without reading it and did not understand it; failing to read the contract or to have it read to him or to otherwise inform himself as to the nature, terms and conditions of the contract constitutes nothing more than gross negligence on the part of that party and is an insufficient ground upon which to set the contract aside.

*Liebelt v. Liebelt*, 118 Idaho 845, 848-49, 801 P.2d 52, 55-56 (Ct. App. 1990) (citations omitted).

In *Liebelt*, a couple signed a prenuptial agreement prior to marriage. *Id.* at 847, 801 P.2d at 54. The marriage dissolved and the wife challenged the validity of the prenuptial agreement,

arguing, among other things, that it was ambiguous when she signed it, and it should therefore be void. *Id.* The magistrate court found, and the district court affirmed, that the wife did not understand the agreement when she signed it, but this Court determined the facts did not support this conclusion. *Id.* at 849, 801 P.2d at 56. We recognized that a party cannot deny liability for a contract where they had an opportunity to read the instrument and were not fraudulently dissuaded or prevented from reading it. *Id.* We held that the wife had been encouraged to participate in drafting the agreement and that she had actually participated. *Id.* This Court held that the district court erred in concluding that the contract was void because the wife did not understand the effect of the prenuptial agreement. *Id.* The *Liebelt* decision is instructive.

Here, on the left-hand side of the RWC warranty application are three signature lines. Line 11 reads: "11. SIGNATURES: I/We have received and have read the RWC Warranty book and I/we understand the RWC Warranty book." Zigmond's name was typed immediately below Line 11, and she signed the next line and entered August 4, 2021, as the date.

The block of text on the right of the application provides various information, including:

> Both the Homeowner(s) and the Builder must sign this Application acknowledging that . . . (c) a copy of this Application, the appropriate RWC warranty book and any forms needed to comply with state or local governmental requirements have been provided to the Homeowner(s); and (d) this warranty includes a provision for binding arbitration.

The above-referenced language is neither complex nor ambiguous. By signing the warranty application on Line 11, Zigmond affirmatively indicated receipt, review, and understanding of the contents of the RWC warranty book at the time she signed the document. Zigmond cannot now claim that she did not read, review, or understand the RWC warranty book at the time she applied for the warranty.

As further evidence that Zigmond read, reviewed, and understood the terms of the RWC warranty book, Zigmond followed the instructions on the front page of the application warranty to confirm her warranty was validated by RWC. RWC complied with the process set out in the warranty application and sent Zigmond a confirmation code, which Zigmond received and used. In Zigmond's warranty request, she provided the information items as required in section III(B) in notifying the RWC administrator.

Because Zigmond acknowledged she received, read, and understood the RWC warranty, the district court erred in finding that Zigmond's knowledge of the RWC warranty book and the

7

terms contained therein created a question of material fact precluding summary judgment or the stay of proceedings pending arbitration.

**B.      Unresolved Warranty Issues and the Arbitration Provision**

On appeal, according to Monogram, Zigmond's claims regarding her driveway began with a request for warranty performance that could not be resolved between Zigmond and RWC, the warrantor and, thus, fits precisely within the definition of unresolved warranty issues under the warranty. Monogram asserts the only option for Zigmond based on the language in the warranty is arbitration.

Zigmond argues her claim regarding the driveway is not an unresolved warranty issue because there was no disagreement or attempt to mediate or resolve the issue and, therefore, it does not meet the definition of an unresolved warranty issue or trigger the requirement to arbitrate. Zigmond further argues the warranty excludes any issues regarding the driveway and the warrantor indicated the driveway delamination would not be covered by the warranty. As a result, she argues, any issues regarding the driveway fall outside the scope of the warranty and, thus, the warranty and its provisions (including arbitration) do not apply.

"Whether a contract is ambiguous is a question of law which may be freely reviewed by an appellate court." *Brown v. Greenheart*, 157 Idaho 156, 166, 335 P.3d 1, 11 (2014). The purpose of contract interpretation "is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (quoting *Lamprecht*, 139 Idaho at 185, 75 P.3d at 746). "An unambiguous contract will be given its plain meaning." *Lamprecht*, 139 Idaho at 185, 75 P.3d at 746. Determining the scope of an arbitration clause is a question of contractual interpretation. *Mason*, 145 Idaho at 201, 177 P.3d at 948. Whether an arbitration clause in a contract requires arbitration of a particular dispute or claim depends upon its terms. *Id.* "A contract term is ambiguous when there are two different, reasonable interpretations of the language." *Brown*, 157 Idaho at 166, 335 P.3d at 11. A court reviewing an arbitration clause will order arbitration unless the arbitration clause cannot be interpreted to cover the asserted dispute. *Wattenbarger*, 150 Idaho at 315, 246 P.3d at 968. "Doubts are to be resolved in favor of coverage." *Id.* (quoting *Storey Constr., Inc. v. Hanks*, 148 Idaho 401, 412, 224 P.3d 468, 479 (2009)).

The district court considered the definition of the unresolved warranty issue contained in the express warranty and the provisions identifying covered and noncovered items. The district court determined the warranty unambiguously exempted improvements not part of the home itself, including driveways. The district court did not find a dispute existed between the parties on the issue, and therefore, was not subject to mandatory arbitration. The district court erred.

We look to the relevant terms and provisions of the RWC warranty book to determine whether ambiguity exists. There are four terms and provisions that are relevant to the appeal: (1) the provision addressing exempted issues; (2) the definition of unresolved warranty issue; (3) the arbitration provision; and (4) the disclaimer and waiver of warranties.

First, the provision addressing the exempted issues is outlined in Section I(D), which identifies what the warranty does not cover. Section I(D)(2)(r) states in relevant part, "This **Limited Warranty** does *NOT* cover . . . (r) Improvements not part of the **Home** itself, including, but not limited to: recreational facilities; driveways; walkways; patios, porches and stoops not **Structurally Attached** to the **Home**." As the district court noted, driveways are explicitly exempted from coverage. We agree. The plain language is unambiguous.

The next relevant provision in the warranty is in Section V(V):

> **V. Unresolved Warranty Issue**. All requests for warranty performance, demands, disputes, controversies and differences that may arise between the **Purchaser** and the **Warrantor** that cannot be resolved between them. An **Unresolved Warranty Issue** may be a disagreement regarding:
> a. What this **Limited Warranty** covers;
> b. An action performed, to be performed, or not performed under this **Limited Warranty**; or
> c. The cost to repair or replace any item covered by this **Limited Warranty**.

The language in this provision is broad, stating that "all" requests for performance that arise that are not resolved can be unresolved warranty issues. The provision then provides examples, but not an exhaustive list, of the issues that may become unresolved warranty issues, including a disagreement about what the warranty covers. While the provisions within the express warranty identified driveways as a non-warranty issue, the definition of unresolved warranty issues also indicates that disputes over what the express warranty does not cover fall under the definition.

The third relevant provision in the warranty is the arbitration provision in Section III(D):

> **D. ARBITRATION**
> 1. If after thirty (30) days the **Administrator** has not been able to successfully mediate your request, or at an earlier time when the **Administrator** believes

9

that your **Builder** and you are at an impasse, then the **Administrator** will notify you that your request has become an **Unresolved Warranty Issue**.

2. If the **Administrator** determines that an **Unresolved Warranty Issue** exists, either you or the **Warrantor** may request arbitration. Arbitration is the sole recourse for an **Unresolved Warranty Issue**. It is in lieu of court proceedings, the right to which is hereby waived, and the findings of the **Arbitrator** are *final and binding* on all parties with no right to an appeal.

3. To begin the arbitration process, you must give the **Administrator** written notice requesting arbitration of the **Unresolved Warranty Issue**.

Using terms defined within the warranty, the arbitration provision indicates unambiguously that disputes regarding unresolved warranty issues are subject to final and binding arbitration in lieu of other legal remedies.

Finally, on the cover page of the RWC warranty book is a section in all capital letters that reads:

THIS LIMITED WARRANTY IS PROVIDED IN LIEU OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES. TO THE EXTENT PERMITTED BY LAW, THE PURCHASER OF THIS HOME AND ALL SUBSEQUENT PURCHASERS HEREBY WAIVE ALL OTHER EXPRESS AND IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO, THE WARRANTY THAT THE HOME HAS BEEN BUILT IN A FIT AND WORKMANLIKE MANNER AND THE WARRANTY THAT THE HOME IS FIT FOR HABITATION. THOSE WARRANTIES HAVE BEEN REPLACED BY THIS EXPRESS, INSURANCE BACKED WARRANTY.

Similar disclaimer language is repeated in Section I(C)(3) in a bold, italicized font, stating, "***There are no warranties that extend beyond the description contained in this Limited Warranty. To the extent permitted by law, all such other warranties, expressed or implied, including, but not limited to, implied warranties of fitness, workmanlike performance, merchantability, and habitability, are hereby waived.***" Language disclaiming implied warranties is enforceable so long as the language is conspicuous and knowingly agreed to. *See Goodspeed v. Shippen*, 154 Idaho 866, 871-42, 303 P.3d 225, 230-31 (2013). The warranty disclaimer is in a font different than the surrounding text and does not contain complex or legalistic language. The language disclaiming warranty coverage for issues related to construction in a "FIT AND WORKMANLIKE MANNER" is both conspicuous and unambiguous.

The plain language of the relevant provisions is unambiguous. Finding no ambiguity in the provisions, we consider Zigmond's claims. First, we consider her claim for breach of warranty of workmanship. Zigmond is bound by the terms of the warranty and has therefore waived any claim related to workmanship. As a result, the claim must be dismissed.

10

Next, we consider her claim of breach of contract. The RWC book describes procedures that must be exhausted for a dispute to be designated an unresolved warranty issue. Zigmond has not completed those steps and until she does so, her claim is still in the initial stages of the administrative process. Thus, it is premature for Zigmond to assume the warranty will not cover the disputed claim. Regardless, her arguments that Monogram failed to mediate the dispute first or failed to designate the driveway as an unresolved warranty issue are unpersuasive.

First, the language of Section III(C) of the express warranty says the administrator "may" mediate the request. The verb may is defined as "to be permitted to" or "to be a possibility" or can also mean "shall" or "must." MAY, Black's Law Dictionary (12th ed. 2024). The applicable definition is context dependent. *See, generally, Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198-99 (2000). Within subsection (C), the term may is used again to indicate the administrator "may" schedule an inspection of the alleged defect, but the homeowner "must" cooperate with the administrator if it is scheduled. The provision then describes other actions the homeowner "must" do, such as fees they "must" pay. Based on the language used, the plain meaning and the context implies the use of may is permissive as the drafters of the warranty used must to indicate required actions. Additionally, the provision provides alternative action for the RWC administrator if, within its discretion, the RWC administrator determines that resolution between the parties is unlikely, further indicating that mediation is not a required step prior to the initiation of arbitration. Thus, the obligation to arbitrate is not predicated on first attempting mediation.

Second, because Zigmond was the one seeking coverage, Zigmond had the obligation to pursue her claim through the remedies provided in the warranty after being told the claim was denied. Section III outlines the process in step-by-step instructions. Section III(A) instructs a homeowner how to notify the warrantor if a defect occurs and further outlines the process for whether the defect is in year one or a designated structural element. Section III(B) provides explicit instructions on how to notify the administrator, including the email address to contact and a list of items (a-g) to include in the communication. Section III(C) outlines the process and timeline for mediation and inspection of defects. Section III(D) outlines the process and timeline for arbitration of disputes. Although Zigmond disagreed with the statement that the driveway was excluded from coverage (as evidenced by the subsequent lawsuit), she did not pursue the issue with the claims administrator as required under the warranty. As a result, the claims administrator

11

was unaware an "impasse" had been reached, which would result in a request ultimately being designated as an unresolved warranty issue and, thus, subject to final resolution as permitted pursuant to the terms of the warranty. Zigmond completed only the initial step of requesting warranty performance and did not pursue her claim any further with the administrator.

Zigmond asserts that it was Monogram who failed to classify her claim as an unresolved warranty issue and notify her of such characterization. It was not Monogram's responsibility to provide that designation, absent indication of an impasse. Zigmond was the party seeking coverage under the warranty, and because Zigmond agreed to be bound by the terms of the warranty, it was her obligation to follow the process outlined in the warranty. To the extent Zigmond expected the warranty to cover the delamination of her driveway, Zigmond's sole remedy was to pursue her claim through the outlined process, and ultimately, arbitrate her claim.

Zigmond requested coverage for an issue that was exempted, and rather than follow the dispute procedures outlined, she filed suit, attempting to avoid the terms of the warranty and the requirement to arbitrate her claim. The district court erred in finding the driveway dispute did not fall within the scope of the arbitration clause.

## C.     Claims Are Not Properly Before the Court

Zigmond argues Monogram engaged in fraud under the Idaho Consumer Protection Act, I.C. §§ 48-603(13) and 48-603(17). However, this claim has not been adjudicated in the trial courts, and appellate courts do not act as fact finders. *Angelos v. Schatzel*, ___ Idaho ___, ___, 556 P.3d 441, 449-50 (Aug. 16, 2024). Therefore, this claim is not properly before this Court, and we decline to address the claim.

Zigmond also asserts that the Notice and Opportunity to Repair Act (NORA), I.C. § 6-2501, *et seq.*, preserves her right to pursue the construction defect claim against Monogram and she should not be bound by the arbitration provision and required to arbitrate. The purpose of NORA is that it "gives contractors an affirmative defense." *Walker v. Meyer*, 170 Idaho 408, 411, 511 P.3d 828, 831 (2021). A homeowner must provide notice to the builder in compliance with NORA prior to initiating a lawsuit and provide a builder with an opportunity to correct or dispute the issue within a given timeframe. In the absence of a notice of defect from the homeowner, the builder can plead NORA as a defense to the lawsuit. The statute provides that builders should have an adequate opportunity to remedy a defect prior to being subject to litigation. I.C. § 6-2503.

12

NORA outlines notice requirements and dispute resolution guidelines, but it does not provide a separate cause of action for a plaintiff. *Id.*

Zigmond contracted away her right to pursue litigation for construction defects when she entered into the RWC warranty, which was a binding contract explicitly disclaiming express and implied warranties, including the warranty of construction in a fit and workmanlike manner. She further agreed to arbitrate any disputes. Therefore, she waived her right to pursue claims related to warranties in the courts, and her argument that she is now permitted to bypass the process outlined in the warranty is unavailing.

**D.      Attorney Fees on Appeal**

Each party seeks attorney fees on appeal. Zigmond's request for fees is pursuant to Idaho Appellate Rule 40 which permits the award of costs and fees to the prevailing party on appeal. Zigmond is not the prevailing party and, therefore, the request for fees is denied.

Monogram seeks attorney fees pursuant to Section III(D)(6) of the warranty which states "If any party begins litigation in violation of this Arbitration clause, that party must reimburse the other parties for their costs and expenses, including attorneys' fees incurred in seeking to dismiss such litigation." Monogram also seeks fees pursuant to I.C. § 12-120(3) which provides for an award to the prevailing party in an action on a service contract. As the prevailing party, Monogram is entitled to the recovery of costs and attorney fees pursuant to the statute. Monogram is also entitled to costs and attorney fees for Zigmond bringing litigation in violation of Section III(D)(6) of the warranty.

**IV.**

**CONCLUSION**

The district court erred in denying Monogram's motion to dismiss, or in the alternative, stay pending arbitration because the arbitration provision was binding on the parties and the dispute was within the scope of the provision. We reverse the order of the district court and remand this case for further proceedings consistent with this opinion. We award costs and attorney fees to Monogram on appeal.

Chief Judge GRATTON and Judge TRIBE **CONCUR**.

13